IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **CHRISTOPHER HOOD,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | Case No.: 2:05-CV-1032-RDP |
| } | |
| **EVAN MAJOR, in his official capacity** } | |
| **as Superintendent of the Shelby County** } | |
| **Board of Education; SHELBY COUNTY** } | |
| **BOARD OF EDUCATION;** } | |
| **MICHELLE HEAD, in her official** } | |
| **capacity as Assistant Principal of** } | |
| **Chelsea Elementary School; and HELEN** } | |
| **RARDIN, in her official capacity as** } | |
| **Director of Owens House, The Shelby** } | |
| **County Advocacy Center, Inc., and The** } | |
| **Shelby County Advocacy, Inc.; OWENS** } | |
| **HOUSE, SHELBY COUNTY** } | |
| **ADVOCACY CENTER,** } | |
| } | |
| **Defendants.** } | |

## MEMORANDUM OPINION

The court has before it Director Helen Rardin, Owens House, and Shelby County Advocacy Center's Motion for Summary Judgment (Doc. # 49) filed September 8, 2006 and Defendants Evan Major, Shelby County Board of Education, and Michelle Head's Motion for Summary Judgment (Doc. # 51) filed on September 21, 2006. These motions have been fully briefed and were under submission as of October 25, 2006. (Docs. # 7, 40).[1]  For the reasons outlined below, the court finds that the motions are due to be granted.

---

[1] The court notes that on November 20, 2006, after the submission date of the motions, Defendants Evan Major, Shelby County Board of Education, and Michelle Head filed a reply brief in support of their motion for summary judgment. (Doc. # 62).  Although Defendants' November 20, 2006 reply brief renews their motion for sanctions (Doc. # 52), the court finds no basis to revisit or otherwise change its previous denial of this request. (Doc. # 56).

I.      **Legal Standards for Evaluating a Summary Judgment Motion**

Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R .Civ. P. 56(c). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

II.     **Relevant Undisputed Facts**[2]

The Owens House, directed by Helen Rardin, is a child abuse investigative team operated by the Shelby County Advocacy Center, Inc. through government grants. (Doc. # 59, Exs. 1, 2, 3). In the Fall of 2004, Plaintiff's daughter attended a puppet-show for first graders at Chelsea Elementary School which was conducted by the Owens House. (Third Amended Complaint, ¶ 12). The puppet show attended by Plaintiff's daughter addressed four areas relating to child safety: (1) physical abuse, (2) bullying, (3) being left home alone, and (4) inappropriate touching. (Rardin Depo. p.74).  The segment on inappropriate touching featured one puppet reluctantly informing her teacher that her uncle has been touching her and making her feel uncomfortable. (Doc. # 49, Ex. C).  The children were then informed that it is inappropriate for people to touch them in their private parts and instructed that if they ever have a problem with someone touching them and making them feel uncomfortable, they should first tell that person, "No," then get away from them and tell an adult.

---

[2] If facts are in dispute, they are stated in the manner most favorable to Plaintiff. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

(Doc. # 49, Ex. C). The presentation clarified as follows: "persons other than a child's parent should not be touching students in their body parts that are covered by their bathing suit . . . . there is a clear distinction between improper touching by people other than parents, and touching by parents in connection with bathing, dressing or going to the bathroom." (Cash Aff. at p. 2). The facilitators who conduct the Owens House puppet show are trained not to use the words "sex" or "sexuality" and not to identify any body parts by name. (Rardin Depo., p. 65-66).

At some point after the puppet show, Courtney Cash, Plaintiff's daughter's first grade teacher, received complaints from several of the girls in her class that a boy in the first grade class had touched them in their private parts in a way that made them feel uncomfortable. (Cash Aff. at p. 3). Ms. Cash told the girls that the boy should not do this and she would make sure it did not happen again. (Cash Aff. at p. 4). Plaintiff's daughter was not one of the girls who had been touched, although she was a student in the same class. (Cash Aff. at p. 4).

Cash confronted the boy and although he admitted to touching girls in the class, he did not identify how many girls were affected. (Cash Depo., p.17-18). Cash consulted her administration, and they agreed to address the problem by doing several things: (1) counsel the boy that what he did was inappropriate; (2) call the parents of the boy and explain what happened; (3) talk to the entire class, explaining that if anyone made them uncomfortable by touching their private parts – the parts covered by their bathing suits – they should talk to someone, their parents, their teacher or someone they trust to tell what happened; and (4) call the parents of the girls and explain what had happened. (Cash Depo., p.17-18; Cash Aff. at pp. 3-4). After Cash made the statement to the class, a boy in the class asked what to do if his parents touch him in the private parts. (Cash Aff. at p. 4). Cash

explained that if a child is preparing for a bath or getting dressed or going to the bathroom it is appropriate for parents to touch that child in connection with those activities. (Cash Aff. at p. 4).

Following this incident, Plaintiff's daughter returned home and informed her parents they were no longer allowed to touch her in the "bathing suit areas." (Third Amended Complaint, ¶ 29). Plaintiff alleges that when he patted her on her rear end as she went to bed that night, she told him, "daddy, if you do that, it's in a fun way, that's okay, right?" (Third Amended Complaint, ¶¶ 31, 32). Plaintiff alleges that since those "inappropriate touching" discussions, his daughter has undergone significant changes in her behavior towards all the members of her family, especially the males, and that her innocence is lost. (Third Amended Complaint, ¶¶ 47, 48, 49).[3]

Plaintiff never complained to Cash about her conversation with the students, and although Cash attempted to contact Plaintiff numerous times to discuss the fact that his daughter was having academic problems in her class, he never responded. (Cash Aff. at pp. 5-7). Plaintiff did, however, talk to officials at Chelsea Elementary School Principal to voice his concern about not having been told of the "inappropriate touching" discussions in advance. (Doc.# 59, Ex. 8). Specifically, Plaintiff talked with Assistant Principal Michelle Head and expressed his concern about Cash's comments to the class. (Head Depo. 13). Plaintiff thought that Cash had told the students that their parents could not touch them, but Head advised him that this was incorrect. (Head Depo. 25). Plaintiff asked Head to develop a "policy" requiring parental notification before addressing incidents of inappropriate touching, but Head declined based upon her belief that teachers must be able to use

---

[3] Although Defendants also present evidence regarding an investigation of Plaintiff for suspected child abuse of his daughter, the court finds this information irrelevant to the issues here. That investigation is not part of Plaintiff's claims in this case as outlined in Plaintiff's Amended Complaint and clarified by Plaintiff's opposition to Defendants' motions. (Docs. # 57, 58).

their professional judgment to handle situations in a timely and appropriate manner. (Head Depo. 17-18). Plaintiff also contacted the Superintendent of the Shelby County Board of Education, who Plaintiff says "was clueless" about the situation. (Hood Depo. 97-98).

### III. Applicable Substantive Law and Discussion

The crux of Plaintiff's argument is that Plaintiff was not warned in advance of, nor given the opportunity to exempt his daughter from, two school-led discussions in which inappropriate touching was addressed – an Owens House-sponsored puppet show addressing child safety and a teacher-led classroom discussion concerning the conduct of a boy who was inappropriately touching girls in Plaintiff's daughter's class. Plaintiff claims that discussions about inappropriate touching constitute the teaching of sex education in violation of state law and contrary to his privacy rights as a parent, and he believes that the Alabama statutes confer on him the right, as a parent, to exempt his child from any in-school discussions that he believes are connected to sex.

Therefore, his first claim against Defendants is that their failure to afford him the right to "opt-out" his daughter of such discussions violated Ala. Code § 16-41-6 and his procedural due process rights. Plaintiff also alleges that as a consequence of the failure to give him advance notice of the discussions, he was denied the opportunity to speak out against such discussions in violation of his First Amendment right to freedom of expression and in violation of his right to privacy. For the reasons outlined below, all of these arguments fail.

#### A. Due Process

Summary judgment in favor of Defendants is appropriate as to Plaintiff's due process claim because his statutory basis for such a claim is flawed from its inception. Plaintiff relies on Alabama Code § 16-40A-1, *et seq.* ("Responsible Sexual Behavior and Prevention of Illegal Drug Use") and

Alabama Code § 16-41-1, *et seq.* ("Drug Abuse Education") as the support for his claims that the teaching of sex education was prohibited at his daughter's school and, in any event, that the school has an obligation to notify him in advance of such discussions so that he can exercise his right to exempt his daughter.  As outlined below, neither of these statutes provides for an advance notification right or an "opt out" right regarding "sex education" and neither of these statutes is relevant to the arguments that Plaintiff makes in this case.

First, Section 16-40A-1, *et seq.*, upon which Plaintiff relies for his contention that the teaching of "sex education" is prohibited at his daughter's school, does not address whether sex education should be conducted, much less when and where the teaching of sex education is appropriate.  In fact, that statute states the intent of the legislature to place certain subject matter *requirements* on sex education programs in public schools in an effort "to find effective means, within the context of the school environment, of reaching adolescents before they become sexually active . . . and to promote self discipline and other prudent approaches to the problem of premarital sexual relations of adolescents."  16-40A-1(b)(1);16-40A-1(b)(2).  If anything, Section 16-40A-1 *encourages* thorough sex education in schools by placing minimum content requirements on any program in Alabama public schools that "includes sex education or the human reproductive process." Ala. Code § 16-40A-2.  Thus, Plaintiff's argument that sex education is prohibited by Section 16-40A-1 is misguided.[4]

---

[4] Plaintiff's only other support for his contention that sex education was prohibited in his daughter's class is a series of documents that appear to outline general guidelines for the curriculum in all grades and specifically Kindergarten, First Grade, and Second Grade classes. (Doc. # 59, Ex. 12-14).  Although these documents are not identified or otherwise authenticated, Plaintiff represents that he obtained the materials from the Alabama Department of Education website. (Doc. # 57, at 5).  There is no indication that the documents presented to the court constitute a mandatory curriculum or, as Plaintiff argues, an exclusive curriculum for the specified class levels. Accordingly,

In any event, Section 16-40A-1 simply is not applicable to Plaintiff's claims in this case. Neither the child safety presentation nor the teacher-led discussion regarding a class member's conduct reasonably constitute "sex education" under the statute. It is undisputed that neither discussion included the words "sex" or "sexuality" and neither speaker identified any body parts by name.[5] Thus, even assuming that the teaching of sex education was prohibited in Plaintiff's daughter's school, the situations about which Plaintiff complains in this case would not fall within the scope of that ban.

Moreover, Plaintiff's reliance on Section 16-41-6 is also misplaced. Plaintiff apparently reads Chapter 46, which addresses "Drug Abuse Education," to give him the right to be notified of and exempt his daughter from the above-referenced "inappropriate touching" discussions. The only exemption allowed by Chapter 46, however, relates to the right to exempt, on the basis of religious teachings, from the teaching of disease. To comply, a parent must submit a signed statement that such teaching of disease conflicts with the religious teachings of his church. Ala Code § 16-41-6 ("Any child whose parent presents to the school principal a signed statement that the teaching of disease, its symptoms, development and treatment and the use of instructional aids and materials of

---

Plaintiff's assertion that "[u]nder Alabama curriculum, the [Defendants] are not supposed to be teaching any sex education for grades k-2" (Doc. # 57, at 5), remains unsupported.

[5] Of note, the discussions at issue in this case do not even constitute sex education under Plaintiff's own definition. When asked during his deposition to define that term, Plaintiff stated that any discussions about drugs, alcohol, teenage pregnancy, and sexual abuse would, by his definition, constitute sex education. (Hood Depo. p. 66-70). The topics which Plaintiff believes are prohibited under Alabama law are not contained in the script of the presentation given by the Owens House and were not addressed by Cash in her discussion with the class. (Doc. # 49, Ex. C). Moreover, Plaintiff appears to agree with the school's message regarding inappropriate touching. When asked what he would tell a child who had been touched inappropriately, Plaintiff responded, "Not to let him do that again, you know, to tell her to, you know, don't let him do that. If there's a teacher there, let the teacher know what's going on." (Hood Depo., p.108).

7

such subjects conflict with the religious teachings of his church shall be exempt from such instruction, and no child so exempt shall be penalized by reason of such exemption."). It is undisputed that that neither of the discussions at issue in this case addressed any type of disease or its symptoms.[6] Moreover, Plaintiff's assertion that "these two code sections [16-40A-1 and 16-41-6] can be read together, for they both involve Drugs and Alcohol and talk about diseases" is simply far wide of the mark. Section 16-41-6 does not mention sex education or otherwise give any indication that it should be read in conjunction with Section 16-40A-1. There is simply no basis for Plaintiff's bald assertion that the "opt-out" provision of Section 16-41-6 is applicable in this case.

Because Plaintiff has offered no other legitimate support for his alleged rights to "opt-out" his daughter from sex education or to receive advance notice of any discussions even remotely related to sex,[7] he has failed to show any due process right that he was owed – much less that Defendants violated. Accordingly, Plaintiff's due process claim must fail.

---

[6] In any event, §16-41-6 places the burden on Plaintiff to exercise his right to opt-out. It does not place a duty on an entity such as Owens House or a teacher like Cash to notify parents that any potentially offensive material will be taught. Thus, even if this Section applied – and it does not – the burden is placed squarely on Plaintiff to exempt his child from such teaching.

[7] Although Plaintiff also points to certain documents, apparently retrieved from various internet sources, that identify Alabama as an "opt-out" state, he offers no support or explanation of this classification and why it applies to the discussions at issue in this case. (See Doc. # 59, Ex. 5 entitled "State-level Policies on Sexuality, STD Education;" Doc. # 59, Ex. 11 entitled "Siecus Public Policy Office State Profile" which cites to Ala. Code § 16-40A-2 for the statement "Parents may exempt their children from sexuality education and/or STD/HIV education classes.") Moreover, Plaintiff has not even demonstrated that these documents represent the law of Alabama accurately. Standing alone, these unauthenticated, unidentified documents obtained from an internet search are not admissible support for Plaintiff's allegations.

B.  **First Amendment and Right to Privacy**

Although Plaintiff also claims that his First Amendment rights and his right to privacy have been violated by the two "inappropriate touching" discussions at his daughter's school, the court struggles to make sense of Plaintiff's argument. Plaintiff's "analysis" consists solely of a listing of a number of cases addressing constitutional issues and their purported holdings, without any link to the facts of this case. (Doc. # 57, at 6-9). In any event, the litany of cases cited by Plaintiff are not relevant to his claims.

The First Amendment, as applied to the states through the Fourteenth Amendment, restricts governmental interference with citizens' free expression rights. *Sweezy v. New Hampshire*, 354 U.S. 234, 250 (1957); *Kiyishian v. Board of Regents*, 385 U.S. 589, 603 (1967). Nonetheless, courts defer to state authorities not only in determining courses of study but also in establishing standards for pupil performance. *Arundar v. Dekalb County School District*, 620 F.2d 493 (5th Cir. 1980). In this case, there is no evidence that Defendants restricted Plaintiff from any exercise of his First Amendment rights. It is undisputed that Plaintiff objected to the discussions at issue by talking with school officials who respectfully disagreed with his assertions. (Hood Depo. 151-152 (Q. "Has any of the defendants told you you cannot exercise your First Amendment rights to speak out about issues that are important to you?" A. "I don't think they said that.")). Plaintiff expressed his views; he just did not like the reasons provided to him. Moreover, as outlined earlier, Plaintiff had no right to "opt-out" his daughter in advance of the discussions of which he complains. Therefore, Plaintiff cannot claim that he was denied freedom of expression because he was denied an "opt-out" right. There is simply no basis for Plaintiff's argument that he was denied freedom of expression.

Plaintiff's claim that Defendants violated his right to privacy because sex education is the exclusive domain for parents also fails. As outlined earlier, the discussions at issue in this case were simply not sex education and therefore, the school's decision to address inappropriate touching does not constitute a violation of Plaintiff's protected right of privacy. *See Thornberg v. American College of Obstetricians*, 476 U.S. 747 (1986); *Loving v. Virginia*, 388 U.S. 1 (1967); *Griswald v. Connecticut*, 381 U.S. 479 (1965); *Dike v. School Board of Orange County, Fla.*, 650 F.2d 783 (5th Cir. 1981). In any event, Alabama Code § 16-40A-1 illustrates that not all matters of sex education are left exclusively to the parents. The Alabama legislature has sanctioned the teaching of sex education in schools by placing minimum content requirements on any program in Alabama public schools that "includes sex education or the human reproductive process." Ala. Code § 16-40A-2. Plaintiff's privacy argument fails as a matter of fact, logic, and law.

When one wades through the rhetoric and gratuitious case citations that constitute the bulk of Plaintiff's arguments, the essence of Plaintiff's dispute with the Defendants becomes apparent. He believes strongly that "parents still have the right to educate their children the way they see fit [and] . . . . [t]he school has no right to put into effect mandatory and secret classes behind the backs of the parents." (Doc. # 57, at 12). No matter how strong Plaintiff's beliefs, however, his claims are simply not actionable under the law this court is bound to follow.

**IV.    Conclusion**

For the reasons outlined above, the court finds that Defendants' motions for summary judgment are due to be granted and Plaintiff's claims dismissed. A separate order will be entered.

**DONE** and **ORDERED** this _____29th_____ day of November, 2006.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE